# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TAOFIK GBADAMOSI, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. PWG-17-1210 |
| TIMOTHY STEWART, WARDEN, | * | |
| Respondent. | * | |

## MEMORANDUM OPINION

Self-Represented Petitioner Taofik Gbadamosi, a federal inmate currently housed at the Federal Correctional Institution in Cumberland, Maryland, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his prison disciplinary conviction for fighting with another inmate. Pet., ECF No. 1. Gbadamosi seeks an expungement of the guilty finding and a remand to the institution to restore 27 days of lost good conduct time ("GCT") days. *Id.*

Pending before this Court is Respondent Warden Timothy Stewart's Motion to Dismiss, or in the Alternative, for Summary Judgment. Resp't's Mot., ECF No. 3. Stewart argues that Gbadamosi is not entitled to the relief he seeks because he failed to exhaust his administrative remedies regarding his disciplinary hearing and he has received all of the due process to which he was entitled. *Id.* Gbadamosi has filed a response in opposition, Pet.'s Opp'n, ECF No. 7, and Stewart has filed a reply, Resp't's Reply 10. After review of the record, exhibits, and applicable law, I have concluded that a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2016).

For reasons set forth below, the Stewart's motion, construed as a Motion for Summary Judgment, shall be GRANTED, and the petition shall be DENIED and DISMISSED.

## Background

Gbadamosi is currently serving an aggregated seven-year sentence following his

convictions for conspiring to commit bank fraud and aggravated identity theft. Gyurke Aff. ¶ 3, ECF No. 3-2. On September 21, 2016, Gbadamosi was involved in an altercation with another inmate while standing in line for dinner. *See* Gyurke Aff. ¶ 5; Pet. 7. The inmate hit Gbadamosi in the face. *See* Gyurke Aff. ¶ 5; Pet. 7; Discipline Rep. 2, ECF 1-1. Gbadamosi then pushed the inmate back in his chest and grabbed him by his shirt, pinning the inmate against the sink behind the serving line. Discipline Report 2. Gbadamosi maintains that he was acting in self-defense. *See* Pet. 7. Both inmates were then separated, at the direction of staff. *Id.*

The next day, Gbadamosi received an incident report charging him under Code 201 with fighting. Discipline Report. On September 28, 2016, the charge was presented to the Unit Discipline Committee ("UDC"), which found that the sanctions warranted were not available at the UDC level. Gyurke Aff. ¶ 6. The UDC referred the matter to the Discipline Hearing Officer ("DHO") and recommended that if Gbadamosi was found guilty, he should receive the maximum loss of GCT and visitation. *Id.* That same day, Gbadamosi received and signed a "Notice of Discipline Hearing Before the DHO," acknowledging that he had read and understood his rights. Gyurke Aff. ¶ 7; Discipline Report 1. The form reflects that Gbadamosi was advised of his right to the assistance of a staff representative, to call witnesses, and present documentary evidence on his behalf at the discipline hearing. Discipline Report 1. Gbadamosi initially requested a staff representative, but ultimately stated that he wished to proceed with the hearing without one. *Id.* Gbadamosi also declined to call witnesses on his behalf. *Id.*

The DHO conducted the discipline hearing on October 5, 2016, and concluded that the greater weight of the evidence supported the charge of fighting, based on the incident report written by an officer who witnessed the altercation as well as the supporting memoranda from staff, clinical assessments of both Gbadamosi and the inmate, and Gbadamosi's own statements.

Gyurke Aff. ¶ 9–10. The DHO considered Gbadamosi's statement of self-defense and determined that Gbadamosi's actions demonstrated that he was a mutual participant in the argument and physical altercation. *Id.* at ¶ 10. The DHO sanctioned Gbadamosi with the loss of 27 days of GCT and 90 days of commissary privileges, and imposed seven days of disciplinary segregation. *Id.* These sanctions were within the applicable sanction guidelines for a Code 201 offense. *Id.*

Gbadamosi appealed the DHO finding by filing an administrative remedy submission at the Mid-Atlantic Regional Office level. Discipline Report 4. On January 31, 2017,[1] Gbadamosi's appeal was denied. *Id.* at 5. Gbadamosi alleges that he then appealed that denial to the Central Office. *See* Pet. 7; Discipline Report 6. There is nothing in the record, however, to indicate that the Central Office received such an appeal. Under the Administrative Program, upon receiving a request or appeal, the administrative remedy clerk stamps the form with the date received, and logs it into the Federal Bureau of Prisons' ("BOP") SENTRY index as received on that date. Admin. Remedy Program 9, ECF 10-1. Nothing in the SENTRY records show that Gbadamosi appealed to the Central Office. According to Gbadamosi, Central Office "ignored [his] appeal submission" and as such, he urges this Court to deem his administrative remedies exhausted. Pet. 7.

## Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court should "view the evidence in the

---

[1] The administrative paperwork denying Gbadamosi's appeal appears to have an error. The date on which the appeal was denied was stamped as January 31, 2016, although the appeal was not filed until December 8, 2016. Discipline Report 5. Howard Williams's Affidavit confirms that it was denied on January 31, 2017. Williams Aff. ¶ 4, ECF No. 3-3.

3

light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

The court reviewing the motion must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 522 (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249–50.

**Administrative Exhaustion**

The Administrative Remedy Procedure in place for BOP facilities provides that if an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within 20 calendar days of the date of the occurrence on which the complaint is based. *See* 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response, he may appeal to the Regional Director within 20 calendar days of the Warden's response. *See* 28

C.F.R. § 542.15(a). If the inmate still is not satisfied, he may appeal the Regional Director's response to the Office of General Counsel, Washington, D.C., using the appropriate form. *Id.* The inmate must file this final appeal within 30 calendar days of the date the Regional Director signed the response. *Id.*

An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. *See id.*; *see also Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"). The Supreme Court has held that "proper exhaustion of administrative remedies . . . 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.2002)).

Here, it is undisputed that Gbadamosi appealed the DHO's decision to the Regional Director. There is insufficient evidence, however, to show that Gbadamosi appealed the Regional Director's denial to the Office of General Counsel. While Gbadamosi claims that he mailed the appropriate form to the General Counsel in February of 2017, his documentation indicates otherwise. Along with his Petition to this Court, Gbadamosi attached the form that he allegedly sent to the General Counsel. That form, however, does not reflect that it was ever properly submitted and received at the Central Office, both on its face and as recorded in the BOP's administrative remedy records. Rather, BOP records show that Gbadamosi never filed any further administrative appeals. Accordingly, Gbadamosi failed to fully exhaust his administrative remedies and his Petition is dismissed.

## Due Process

But even if Gbadamosi fully exhausted his administrative remedies, he presents no grounds for habeas relief. Gbadamosi alleges that another inmate, Robinson, witnessed the altercation, but Robinson was not interviewed despite Gbadamosi's request that Robinson's account of the altercation be placed on the record. To the extent Gbadamosi is asserting that his procedural due process rights were violated by not being afforded the opportunity to call Robinson as a witness at his DHO hearing, this claim is without merit. Moreover, the DHO's finding that Gbadamosi committed the prohibited act of fighting was supported by constitutionally adequate evidence.

The Supreme Court has articulated the standards to which all prison disciplinary proceedings must adhere in order to ensure that inmates' liberty interests are protected by due process. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* Rather, where an inmate faces the possible disciplinary sanctions, he is entitled to certain due process protections, including: (1) written notice of the charges at least 24 hours in advance of his appearance before the prison disciplinary board; (2) an impartial decision-maker; (3) the ability to call witnesses and present documentary evidence at the hearing where such would not be unduly hazardous to institutional safety or correctional goals; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary proceeding involves complex issues; and (5) a written statement by prison disciplinary officials as to the evidence relied upon and the reasons for taking any disciplinary action. *Id.* at 564-71; *see also Brown v. Braxton*, 373 F.3d 501, 504 (4th Cir. 2004). As long as these requirements are met, due process is satisfied. *See id.* at 563.

Here, Gbadamosi was not denied any due process rights afforded to him under *Wolff*. First, he was provided written notice of his charges in the form of the incident report on September 22, 2016, which was more than 24 hours prior to the hearing held on October 5, 2016. Second, the matter was heard by the DHO, who was not a witness to the incident. Third, Gbadamosi was afforded the opportunity to call witnesses and present documentary evidence on his behalf, but he declined to do so. Gbadamosi's decision not to call any witnesses is evident from his signature on two separate forms stating that he did not wish to call witnesses. Fourth, he was offered the assistance of a staff representative at the hearing. Although Gbadamosi initially requested a staff representative, he ultimately declined the assistance. Finally, he was provided a written statement, the DHO report, stating the evidence relied upon and reasons for taking the disciplinary actions. As such, Gbadamosi failed to state a claim for relief for violation of his due process rights.

Furthermore, the Supreme Court has held that the "requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). "This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced.'" *Id.* (quoting *United States ex rel. Vajtauer v. Comm'r of Immigration,* 273 U.S. 103, 106 (1927)). In essence, "courts are to give deference to prison officials and should intercede in prison discipline cases only when the sanctions are wholly unsupported by the record." *Gomez v. Graves*, 323 F.3d 610, 612 (8th Cir. 2003) (citing *Hill*, 472 U.S. at 455-56).

For example, in *Hill,* the Supreme Court found that a prison disciplinary board met due process requirements when it revoked inmates' good time credits based on an officer's indirect

observation that they had assaulted another inmate. *See Hill*, 472 U.S. at 447-48, 456-57. There, the officer heard an inmate twice loudly say, "What's going on," saw an inmate bleeding from the mouth and suffering from a swollen eye, and saw the charged inmates jogging away from the scene. *Id.* at 447–48. Even though there was no direct evidence that any one of the charged inmates had committed the assault, the Court concluded that the "meager" evidence was nevertheless sufficient to meet the due process requirement. *Id.* at 457.

In this instance, the evidence was far from meager. The DHO relied on direct evidence from the reporting officer, who stated that he saw another inmate push Gbadamosi in the face and that Gbadamosi shoved the inmate back in his chest and grabbed him by the shirt, pinning the inmate against a nearby sink. In addition to this eyewitness account, the DHO also considered Gbadamosi's admission that he put his hands on the inmate's chest to stop him. *Id.* After considering the report and Gbadamosi's defense, the DHO determined that Gbadamosi's actions demonstrated that he participated in the prohibited act of fighting. Taken together, there is much more than "some evidence" to support this finding. Accordingly, the Petition is denied.

## Conclusion

I conclude that no genuine issue as to any material fact is presented and Respondent is entitled to a judgment as a matter of law. Summary judgment shall be entered in favor of Respondent and the petition shall be denied and dismissed by separate Order.

Dated: <u>January 3, 2018</u>              <u>      /S/           </u>
                                                     Paul W. Grimm
                                                     United States District Judge